2460113, LA Pub Svc Comm, 2460113, LA Pub Svc Comm, 2460113, LA Pub Svc Comm, 2460113, Let's begin. May it please the Court. My name is Mike Fontham. I represent the Louisiana Public Service. In this case, we're here for the second time in cases that are six years old before FERC. FERC is in judicial review and imposing irreparable injury on Louisiana ratepayers through recalcitrance, misdirection, and just plain delay. In another case pending in this court, 2360110, which reply briefs are due tomorrow, FERC freely says opinions are final on the ADIT issue, the Decommissioning Accelerated Income Tax issue. But you can't review it because nobody claims to be harmed. That's their position. Somebody is harmed. Either the ratepayers don't get their refunds or energy has to pay the money. Mr. Fontham, I was going to ask you about that because I was on the panel last time, as you know. And one, I guess, significant difference, I'm not sure how significant it is, is that we have a pending appeal on the, I'm frankly just not sure how to refer to these different things. I'm going to call that one the ADIT issue. ADIT. ADIT. So, explain to me how the relief that you're asking for with respect to the ADIT issue interacts with this appeal that's briefed up, almost briefed up in our court, that's going to be, you know, presumably heard. I'm a little bit concerned about that because why couldn't, I guess, why couldn't what you're asking for here, you could ask the panel for in that appeal? I can tell you that FERC says they can't do it. Well, right, but who knows? Maybe they won't prevail on it. And it is true that we don't claim to be aggrieved, and Energy claims it's not aggrieved, which we regard as just plain noncompliance. The compliance proceeding is neither here nor there because everybody agrees the decisions are final. All they have to do is say, who's aggrieved? You know, if you ask FERC's counsel who's aggrieved, it'll be entertaining to watch the answer because they won't say. But what are you asking for in the appeal that, the ADIT appeal that's been almost briefed up in our court? Our request is that if Energy should issue some, I mean, if FERC should issue some kind of clarification, that it has to explain it because nothing in the order would support such a clarification unless it supports us. Energy has raised a number of issues that it has fully briefed with regard to the ADIT issue. FERC has not defended the ADIT decision either way. It doesn't say anything. I guess what I'm asking is the ADIT decision, is that at issue in the appeal, the separate appeal? No, it's in the 6011 appeal, and it was raised, I guess, well, Your Honor, the way judicial review works, you have to raise it if it's a final order. And you can be cut off. FERC has cut us off by changing decisions on compliance. The D.C. Circuit didn't let them get away with it, but they've done it. Okay, what are you asking us to do in the, with respect to the ADIT? In our reply, Your Honor, we say, tell us within 10 days who won. That's all they have to do. It's a one-sentence response. It's not hard. They ought to know what their own order says. What is the dispute in that case, correct me if I'm wrong, is over the amount of refund? Is that right? Or is it the compliance period? Or I know you're saying Sari says they don't owe anything despite the decision. Is that what's at issue? This is the situation, Your Honor. The ALJ held you have to provide refunds $300 and some odd million dollars back to 2007. FERC said, no, you have to provide refunds back to 2004. After the ALJ decision, Energy went in and it said, first they ran to the IRS to give up the deduction because they didn't want, they didn't want to have further refund liability. And they settled with the IRS for 10%. So they made what FERC called a preemptive filing that provided the 10% going back to 2015, refunds, the preemptive refunds. Okay. When 581 came out, they said, we don't owe anymore. The compliance filing they made says, this is what we did when we made the preemptive refunds. Nothing about further refunds. They just aren't doing it. They're saying they won. Okay. So that is the issue before the court. And we're talking about money that the ratepayers had to pay under FERC's normalization rule for taxes, normalized taxes, that they didn't have to pay to Energy, didn't have to pay to the government. They held it. It's cash. And FERC justified that in, you know, 1984 when it said that, well, it will have to be used as a rate-based reduction. And FERC has said in, you know, in an accounting order and in opinion 581, if it's a, you know, I guess you call it an aggressive or the judge called it bogus tax deduction, that doesn't matter. You got the money. And it's supposed to be a rate-based reduction. And Energy is holding. I think they owe us, you know, other parties are giving up. But they owe us about $150 million on that one case. And they've got the cash. And by the fact that their, you know, the FERC interest rate is like it's been 6.5 to 8.5, they can earn 10. almost 11. They're in great shape. Hold the money. But, you know, what is the reason why FERC can't just decide the case? Just issue a one-sentence thing. And they won't do it. And they won't do it in 60110. Wouldn't it have been hard? I bet you FERC's counsel won't tell you today who won. Yes, Your Honor. It's not clear to me whether you're asking for that same relief and that appeal is pending. We are basically supporting FERC, Your Honor, on the decision that they made. Basically, we're saying if you change it, I mean, our brief is pretty much prepared. You know, it defends FERC's order against Energy's appeal. So that's our request, I guess. Now, you know, don't let them change it. It's part of our request. Really, that's here. And, you know, they're definitely impeding judicial review. And it's as clear as a bell. They tell you in the case, oh, we process these cases. We process the settlements very quickly. I believe this court a year ago, a little over a year and a half ago, made it clear that's not legitimate to force everybody to settle while they're suffering irreparable harm. You know, this was filed six years ago. I've got an 11-year-old granddaughter who was five then. I mean, you know, they're waiting for me to die. But, you know, it's clear that they're abdicating their duty. They're supposed to decide these things. And think about this, six years on the equity ratio. The equity ratio doesn't have anything to do with the MISO case. It's completely independent of the MISO case. It's a separate complaint that we filed. The judge ruled on it three years ago. The first test is, you know, is it a higher equity ratio than any we have ever approved for an electric utility? It's five points higher than, it's about seven points higher than they've ever approved. The judge said 48 percent is reasonable. They've got 65 percent in the capital structure right now, which, because equity is more costly and you have to add taxes to equity, so it's a lot more costly, allows them to keep charging, keep overcharging customers. So are we talking about the second set now? We're not talking about the ADIT anymore. We're talking about the return on equity and equity ratio. We're talking about the equity. There's two parts of that. One complaint was the return. The other complaint was the equity ratio. So if you've got, usually it's around 50-50, okay? The judge said 48 percent equity, and the equity is more expensive. So if you raise that equity ratio, you lower the debt ratio, and you're averaging the two, you're going to come up with a higher ROE than you add taxes to it. All right. Now, this is the same thing we addressed in the mandamus last time, right? We addressed that in the mandamus the last time. And we asked them for a letter, and they filed a detailed letter, and they talked. I mean, does this come down to the MISO, MISO, I'm not sure how to pronounce that, the MISO? I'm not hearing so well. Yeah, that's all right. I thought in the letter they said, well, there's been a change in the analysis from the D.C. Circuit. Not from the equity ratio. There's no change that's occurred. In fact, they've reaffirmed the rule in the case called MISC. That's not at all an issue because of this MISO case. Now, the MISO case is return on equity, and they're waiting on the MISO case. But the MISO case is a little different because it was decided in 2015, and the lower rates went in. And on rehearing, you know, there's been all these delays. But FERC issued a decision saying, you know, if we change that decision, we're going to repair it all the way back to 2015. There isn't any irreparable injury in that case. This case is a separate case, an independent case, where there is irreparable injury. And here we are, in this case, seven years later. Well, it was actually intended to be a friendly question. I thought that the justification given for the delay by FERC last time was the MISO case. That was. Okay. But that was a year ago. So is that an important part of your argument? Yes, Your Honor. The MISO case has been on remand. Next month, it will be two years. But, again, they can take, you know, as far as irreparable harm goes, they can take as long as they want. In our case, they can take as long as they want. We paid 10.94%. The judge said 9.32%. So, you know, at what point do they have to consider the rate payer? And what they're doing is just abetting energy in trying to settle up. I mean, it's as clear as a bell. They basically say it. Oh, we process the cases. We do settlements real fast. And it sure is. You know, in the statute, it is true. The statute doesn't contain a hard and fast deadline. But the statute says, and this is mandatory, you have to give preference. You have to give, FERC shall give preference to these cases over other cases before it, other matters before it. Well, they just issued a huge rule that upsets federalism on transmission. They reversed themselves, Order 1920 in May. They had enough time to do that. It's about that thick. But they can't, you know, they say they can't figure out how to do an ROE. I mean, that's not that difficult. So the issue is the methodology for calculating the return on equity? Yes, Your Honor. They used to have a pretty simplified approach, which was a discounted something, any future revenues. But then when, you know, the interest rates all went way down, apparently, this is my opinion, they didn't want the ROE to go much below 10%. So they came up with a four-part method. One of the parts of the method on rehearing, they dropped it. It was pretty wacky. So three left. One of them is the DCF. And the one that the DC circuit reversed was risk premium. And what had happened was that FERC had bashed risk premium in a previous in its order. And then it came out and said, well, we're going to put risk premium back in. So the DC circuit said, well, that's clearly arbitrary. You haven't explained why any of the bashing is not correct. Let me ask you this. As you understand it, what is the procedural steps necessary or the decisional steps for FERC to resolve this question? Do they have to have a hearing? No, Your Honor. It's on remand. They haven't asked for briefs. They haven't done anything. All they do is issue an opinion. That's all it takes. But they don't do it. They haven't done it. Briefs would be next. Well, an appeal would be next or a rehearing request. But, no, they will just decide it. It's just pending, awaiting decision. Yes. How long has that been? Two years. In the other case, it's been six years. It's been three years in our case since the ALJ ruled, and then it goes up to FERC. And every day, we pay an exorbitant rate of return. We pay on an exorbitant equity ratio. And we can never get it back because the refund period is 15 months. And that was gone before the ALJs ruled. So, number one, we request that the court issue an order, as we asked in our reply brief, within 10 days, tell us in what. And then on the, I believe, 90 days on the other cases. All right, counsel. Thank you, Your Honor.  May it please the court, Houston Shaner, representing respondent Federal Energy Regulatory Commission. I wanted to ask the court, can you hear me well enough? I'm not sure if the podium can raise or lower. If I can try to move it. If so. You can move the microphone. Move the microphone. I'm trying to make sure I speak into it well enough. But if not, just please let me know. Okay, certainly. I'd like to start where Mr. Fotham left off with the return on equity complaint. Judge Davis, you mentioned the fundamental issue is the methodology for calculating the return on equity. And there are really two aspects to that. First, it's a step to determine whether or not existing rates are unjust and unreasonable. And then there's a methodology to set what is a just and reasonable return on equity. And that methodology is fundamental to the commission's rate-making authority under the Federal Power Act. Indeed, there are probably a few questions that are more fundamental to setting just and reasonable rates and ensuring the statute is met by the industry. And because of that, whatever proceeding the commission sets that methodology in, whether it's Louisiana's 206 complaint or the MISO or MAND proceedings, that will have industry-wide implications. And you can see that just from the MISO or MAND proceedings. I'm sorry, the MISO orders that were vacated by the D.C. Circuit. Just by looking at the captions, you'll see that there are scores of industry participants and customers on both sides, literally a huge record as well. I think I understand that. Last time, I don't remember if you argued the case law. I did not, no. We asked for a letter basically saying, well, what's the cause of the delay? Why have they been pending so long? And I believe part of your letter, and I think I'm just paraphrasing here, is that you were having to revise your entire methodology for calculating the return on equity following the 2022 MISO opinion from the D.C. Circuit, right?  Okay. So that's been now since you sent that letter, I don't have the date here, but it's been what, a year? Yes, I believe that's correct.  So explain to me, you know, the more time goes by, the more concerns in my mind grow about, well, what is actually happening? I mean, I understand that we effectively accepted that as a justification. We denied mandamus after we received the letter, but now a year has gone by. So how am I to understand why is so much time gone by? Well, precisely, Judge Duncan, because it is so important, this question, the Commission has made it a top priority and has been working diligently on the issue, and I have been authorized to represent that the Commission intends to act on the MISO remand proceedings within 120 days, i.e. to vote on an order for those remand proceedings. That will clear the way in terms of methodology for further work on the Louisiana 206 complaint against Intergy, and the Commission intends to act on Louisiana's complaint reasonably soon after it concludes the MISO remand proceedings and intends to do so by the end of this year. So you are authorized to represent to this Court 120 days to respond to the D.C. Circuit and by the end of the year to deal with what's before us on this issue? That's correct, sir. And that should include the capital structure claims or what my colleague, Mr. Fontham, calls the equity ratio claims as well. But they did consolidate those claims with the return of equity proceedings as well. Breaking news. Certainly. Hopefully that is the way, Mr. Fontham. Well, we don't know. I would also like to touch on Mr. Fontham raised the issue of irreparable harm. His briefing refers to some sort of retroactive relief in the MISO remand proceedings. It's not entirely clear what he means by that. It's a little bit vague in the briefing. I think I know, but I wouldn't want to speculate. But I will say that he has made similar or Louisiana has made similar arguments in the 206 complaint against Intergy, at least in terms of some form of retroactive relief. Now, in candor, the ALJ denied those arguments and that relief. But as I understand it, Louisiana continued to raise the same issue on its briefing to exceptions to the commission. And while I can't say what the commission will do with respect to those arguments, they are at least still alive before the commission. And I understand Louisiana to be at least confident in those arguments as well. Okay. Is that issue live in this appeal to this court that's pending? To make sure I understand your question, Judge Davis, in terms of is the equity ratio or capital structure claim at issue here? Oh, I'm sorry, you mean the merits litigation opinion 581? Yes. The return and equity complaints and the equity ratio claims are a separate proceeding? I thought those were separate from the appeal.  That's the thing we talked about first with him. That's a pending appeal in our court that has to do with opinion number? That's correct. 581.   Okay. So, I mean, explain it. What's at issue in that appeal? Mr. Fontham says that Louisiana is actually supporting FERC in that appeal. I don't know if they're an intervener or not. I need to go look at the briefing. They're both a petitioner and an intervener. It's essentially cross petitions in the 581 litigation, and that is case 23-60110. And the parties certainly have a live and judiciable case of controversy on many of the claims related to, for example, rental expenses under energy sale and leaseback of the Grand Gulf Power Plant, as well as certain depreciation expenses that are not tax-related. But is the ADIT issue that Louisiana is talking about, LPSC is talking about, is that at issue in the pending appeal? It has been briefed, but as you'll see in our response brief, we certainly think it's not judicial, and that is in part because neither party, as Mr. Fontham conceded, neither party has alleged that they've been injured by the commission's underlying orders from 581 and their order on rehearing. Both sides claim victory, and they were sort of locked into that position in this appeal because they did so in their rehearing request. In fact, Louisiana praised the commission's opinion on 581 with respect to the ADIT issue. Well, what they're saying is that they won in that case, and Siri lost. I'm paraphrasing, right? I'm sure it's not that simple because nothing's simple in these cases. But that Siri is saying it doesn't owe any money in refunds. So both Intergy and Louisiana have claimed that they won on this ADIT issue, and that's because they have competing interpretations of 581, quite substantial portions of it, as well as the order on rehearing. The commission issued an order on hearing after there were sort of requests for hearing, but really motions for confirmation. But even after that, the parties continue to dispute what the rehearing order meant, and that is sort of briefed in parallel in the compliance proceeding that is the subject of this petition. Okay, so Firk's position is what I heard you say, and of course I can go look at the briefing, is that this issue on the ADIT issue, forgive me for the simple way I put these things, is not justiciable. That's correct. You're telling our court, and again, I know it's in your brief, you're telling our court you can't adjudicate that. It would not be appropriate to adjudicate the issue in that appeal, and that is because both sides are aiming at what they very explicitly say, that the commission cannot change its underlying orders there, and the commission has not done so. And I have to express some puzzlement. Mr. Fotham's claims that he expects appellate counsel to resolve the dispute. I'm not authorized to make decisions for the commission, either in opinion 581 or the compliance proceeding. But I think the fundamental issue is that you can make more breaking news here if you just go ahead. I'm just kidding. I certainly could, but I wouldn't want to be misled. So given your position that the issue shouldn't be decided by our court, how does it get decided then? What does the order mean, 581? I think it's quite simple. The compliance proceeding plays out. That's a separate docket at the commission. It's been litigated. The briefing only concluded near the end of 2023, so it's been under a year. There have been several rounds of briefing. And it's decided whether or not Siri complied with opinion 581 and the order under hearing there. It's an interpretation of those orders, but not a modification of those orders. Or the commission, that is likely the case. Parties sort of suggest the commission might modify those orders. But the commission is just going to decide whether Siri's actions after the commission's earlier orders actually met the meaning and intent of those orders. Okay. And it's well within, because it's less than a year, it's well within all the case law denying extraordinary writs for relief. Because I think the best example is Judge O'Scanlan's opinion in California Power Exchange. He summarizes most of the case law. In that case, which involved a request for refunds under Section 206, he said that only, in that case it was only four months. And that did not justify extraordinary relief because these are important and weighty issues. And the commission needs to be diligent in its review of them. And although Mr. Fonten suggests it might be a single sentence, the commission has a duty not just to diligently review and decide the issues, but to provide a reason and substantive explanations to the parties and the public. I don't really think that anybody ever realistically expects a single sentence order to issue in this case. And that's particularly because it's disputed. And I think, Judge Duncan, to answer your earlier question, how this plays out in terms of the proceedings is the parties have litigated and continue to litigate many of the other issues under opinion 581, and there are many, and they are very substantial in the current appeal before this court. But the court can dismiss the aided claims as unripe there. The commission will decide the compliance proceedings as expeditiously as practical. And then the party, whichever party, if any party is aggrieved by that decision, can appeal to this court. It will be an action by the commission, and they can seek judicial review in that case. The commission will eventually decide that issue about opinion, the meaning of opinion 581. That's correct. Despite my esteemed colleague's assertions that the commission simply will never decide it, there's no indication of that, and it's been less than a year, and that's perfectly within a regional agency action. And there's an appeal from that to? That's correct. And I think if you want an example of that, Ed, you can only look to the, you need only look at the D.C. Circuit's 1985 decision in the city of Cleveland v. Ferk, and I'm happy to give you the reporter number for that if that's helpful. That's 773-F2D-1368. It's actually an opinion written by then-Judge Scalia that is a review of a compliance, an order on a compliance filing. And incidentally, the opinion there ended up creating very significant federal power act doctrine. So even though this might be called a compliance proceeding, it might seem like a fill-in-the-blank exercise, it really isn't because there are fundamental issues here. And you can sort of pick that up by the fact that Louisiana claims repeatedly that these are very sort of economically, you know, substantial issues that need to be decided. And it is partly because of the gravity of the situation that the commission has been diligently working on that and wants to make sure they address all the questions adequately. Now, my colleague from Louisiana also raised the prospect of irreparable harm, not only in the return on equity proceeding, but also in the compliance proceeding. But here I have to simply respectfully disagree with him. There is no dispute that the refunds owed, whatever they might be under Opinion 581, will accrue interest. And that interest continues to accrue and has accrued since the refund obligation occurred. And that's under commission regulation and also within the statute of Section 206 itself. But isn't there a callback limit on the time you can go back? Judge Davis, that is correct, but with respect to the refunds itself. So if this were the original 206 proceeding, there would be a 15-month limit on the refunds. And so when they file a complaint, the commission, the original Section 206 complaint that was adjudicated by Opinion 581, the commission has to set a refund effective date. And that's often at the time of the complaint, but it can be up to five months after the complaint. And then there's up to a 15-month window in which refunds will accrue. But the refunds have already been set in this case, and the compliance proceeding is not itself a Section 206 complaint. Those complaints have already been decided. So the refund obligation exists. No one disputes that there is a refund obligation. They just dispute the scope of that. But whatever the scope may be, interest is accruing on that scope. They're going to get the money. If there's any money that comes out of that, they're going to get it. That's correct. And it's not just the money. The injury underlying Mr. Fontham's arguments is a time value of money, and they will be protected by that. Now, he's also mentioned in the briefing and a few minutes earlier, there's sort of assertions that SERE may somehow, I'm sorry, Intergy may somehow misuse any sort of cash they're holding from their refunds. It's not clear why that's a harm to consumers or exactly what he means by that. But I think it's wrong for two reasons. The first is that this is a very deep-pocketed, very sophisticated utility that can easily access the deepest and most liquid capital markets in the world. They do not need this amount of consumer money to finance anything at Grand Gulf. And if you want to get back onto that, I'd certainly suggest you look at the 581 briefs and the financial wizardry that's occurring there. But at the same time, there are other tools the Commission has to deal with any supposed misuse of these funds. And those include, I think, further Section 206 complaints. For example, if SERE makes imprudent investments and it takes the money and then says we're going to gold plate something at Grand Gulf, Louisiana can file a new 206 complaint or the Commission can even instigate its own investigation under Section 206 to say, no, give that money back to consumers. And, indeed, Louisiana filed a new prudence complaint or a supplemental complaint in October of last year. So certainly, I mean, as you can see from the record, these parties watch each other very closely and are certainly happy to pull the trigger on litigation. There's no reason to think they won't do so as well. Let me just ask you this. How long has this return to equity issue been ready for decision? The MISO decision from the D.C. Circuit came out in, I believe, August of 2022. So the Commission has been working on a new methodology since then. Well, is the briefing all completed? And how long has it been completed? I believe Mr. Fontham is correct that the Commission has not asked for the briefing. There is already a very large record in that case, in part because there was lots of briefing and orders directing briefing. So there is a very deep and well-developed. I'm sorry, Judge Davidson. Will the briefing be called for? That is not my understanding. My understanding is that the Commission intends to issue an order resolving that demise or remand proceedings within 120 days. So all they have to do is go in a dark room and decide based on what they've got in front of them. Well, they certainly need to make sure they have a well-crafted methodology that is well-explained. And I see my time is up. I'm happy to answer any further questions the Court may have. Thank you, Counsel. May it please the Court, Sanford Weisburst, I represent System Energy, the majority owner of the Grand Gulf Nuclear Station in Port Gibson, Mississippi. Grand Gulf is a major employer in Mississippi as well as producer of a lot of electricity. It's one of the largest single-unit nuclear plants in the country. Now, we heard Mr. Fontham go on and on about he's up here protecting Louisiana retail customers. That's only one side of the story. And don't just take it from me. Take it from Mississippi's governor, Governor Reeves. These complaints that are serially filed against System Energy jeopardize the plant in Mississippi. They jeopardize what it provides to the economy, what it provides to the electricity grid. And those are part of the broader context here. Turning to the specific issues, I'm not going to address the return on equity. I'm only going to focus on the ADIT issue. And our main point here is we respectfully disagree with my friend from the Commission. FERC has already decided this issue. And how do we know that? We know that because FERC has precedent, which we cited and my friend did not address today, that says where an argument is made both in a rehearing request in the underlying docket as well as in a compliance docket. FERC decides it in the underlying docket. Are these arguments you're taking up in the appeal that's being briefed in our court in another court? We are, but it also goes, I think, to the question of justiciability. And I'd refer the court to the D.C. Circuit 2008 decision we cited in our letter filed yesterday because that addresses this precise issue of whether an order in the underlying docket is unripe simply because there's a compliance. But you're going to take a different position in the appeal on justiciability than FERC. We will. And I believe, actually, that that's one area where we may be in agreement with the Louisiana Commission. So we're all friends. All the tables, we're friends. And I'm reluctant to get too far into the merits of the appeal. Well, sure, that's a different appeal. I don't intend to do that. But I do want to be clear for the record that our position is that we did prevail in the underlying docket at FERC. We intend to make that case to defend why we're right on that. And with regard to this idea of misusing cash, I want to just add a few points just to set the record straight. Number one, there's no cash generated when the tax position is taken on an amended return. Only on the original return could there potentially be cash generated. But more importantly, to the extent cash is generated, this is an uncertain tax position that was very largely rejected by the IRS. System Energy cannot use that cash however it pleases. It has to hold onto it so it can pay the Treasury as soon as it loses on the tax position, which is what happened here. They had to pay back taxes with interest to the IRS. This is not some piggy bank that they get to use however they want to. They have to hold it in a liquid form, and they can't invest it in rate base. And I think that that's sort of a misconception of Mr. Fontham is that we had this free use of cash to do whatever we wanted to. That is decidedly not the case. Just to just elaborate briefly, though, on the justiciability issue, again, the D.C. Circuit decision, the FERC precedent which we cited in both our response and in the letter. But the last point I want to make here is that whether or not FERC's counsel has authority to give an interpretation or even FERC has authority to give an interpretation, this Court has those orders before it on the companion appeal, which is going to be fully briefed as of tomorrow. And the ultimate word on what those orders mean is for this Court to decide respectfully. And FERC may or may not give an interpretation of that, but that interpretation does not control. It's something to be considered. It may or may not even get deference. They haven't offered one yet. But ultimately, this Court can look at FERC's orders and can see that FERC denied Louisiana Commission's request for a hearing of the August 2023 order where they said system energy has to be ordered to pay more refunds. This Court can see that in the August 2023 order, the Commission ordered a further compliance report from system energy only on a separate sale leaseback issue, not on this tax ADIT refund issue, even though Louisiana Commission was complaining about it back then. So we can look at the plain terms of the FERC's orders and see that they've decided that. That's my argument, at least. If FERC offers a different or a similar interpretation, that will be something that this Court can address in the companion appeal. Unless the Court has any further questions, we request that the mandate must be denied to the extent of the ADIT issue. Thank you. May it please the Court. You know, you've got an agency here, supposedly a regulatory agency that has statutory duties, and part of the statutory duty, in fact, the biggest purpose of the Federal Power Act, was to protect the ratepayers. And they won't issue a one-sentence order. The counsel says, well, everybody agrees they owe refunds. Energy doesn't. Well, it's how much, he says. Energy says it's none. There is nothing to be done in the compliance proceeding. Energy didn't make compliance with a refund order. It said it had already done that for the 10% that it settled with the IRS for related to 2015 only. You can read the order, and it says go back to 2004. Clearly it says that. 2015 can't possibly satisfy that. But they say they don't know anything. So what is FERC doing other than abetting disobedience of an order? By refusing to clarify it. In January of 2023. And, by the way, that case was one of the cases that was before the Court. And, very similarly, they rushed and got it out while the mandamus was pending in 2022. Decided the case the end of 2023. I mean the end of 2022. In January, we filed motions asking FERC to say they did 2-0 refunds. Ignored. That doesn't take any big deal of an analysis. Nobody has questioned compliance on the other issues decided in the 581 case. The compliance was what FERC said to do. We don't agree with what FERC said to do. But they, you know, we don't have a problem with compliance, and nobody else does either. And this issue doesn't involve compliance because they didn't comply. And, you know, put yourself in the, I hope at least one of you or so is on the other panel. Put yourself in the position of that panel. It's not justiciable. You know what FERC says if you try to say, oh, no, their compliance isn't consistent with the order? That's collateral attack on the order. That's a final order. It's been decided. You can't collaterally attack a FERC order. That's what they say. In fact, God help me, I agree with Mr. Wisemers. You know, read that D.C. Circuit case that he filed yesterday. I think it was yesterday. Time flies when you're having fun. But anyway, you know, the court said, hey, FERC was saying we're going to do it on compliance. Exact same thing. And the judge said, no, no, no, no. It's a final order. And we review it now. And then they reversed FERC on that, the issue FERC was trying to put off. So, you know, we request that somebody give us relief. And that's basically our request. All right. You've given us much to consider. Appreciate your bringing this case to us today. We have one more case for the morning.